IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL ACTION NO. |
| v. | ) | 2:21cr101-MHT |
| | ) | (WO) |
| JOHNNIE LEEANOZG DAVIS | ) | |

OPINION AND ORDER

After being found guilty at trial on three counts of carjacking, *see* 18 U.S.C. § 2119, and three counts of using and brandishing a firearm in relation to the carjacking offenses, *see* 18 U.S.C. § 924(c), defendant Johnnie Leeanozg Davis filed a post-verdict motion for judgment of acquittal under Federal Rule of Criminal Procedure 29(c).  He argues that the government failed to present sufficient evidence for a rational juror to find beyond a reasonable doubt that he had the requisite mental state to be adjudicated guilty of the charges.  For the following reasons, the court will deny the motion.

## I.   STANDARD OF REVIEW

On a Rule 29(c) motion for acquittal, the court must determine "whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt."  *United States v. Ward*, 197 F.3d 1076, 1079 (11th Cir. 1999). All reasonable inferences must be drawn in favor of the jury's verdict.  *See United States v. Ceballos*, 706 F.2d 1198, 1202 (11th Cir. 1983).  At bottom, the relevant inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *United States v. Tarkoff*, 242 F.3d 991, 993 (11th Cir. 2001) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

## II. THE CARJACKING OFFENSES

A jury found Davis guilty of carjackings and of using and brandishing a firearm in relation to the carjacking offenses.  The court will discuss the carjacking offenses first.

2

The government charged Davis with three counts of committing a string of carjackings throughout Montgomery County, Alabama during 2020: Counts 1, 5, and 11. 18 U.S.C. § 2119 provides that, "Whoever, with the intent to cause death or serious bodily harm takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so" commits this offense.

At trial, the government presented the following relevant evidence. As to Count 1, C.R. testified that he and his 15-year-old son arrived at his son's house in a Dodge Charger. As C.R. turned to get out of the car, he saw that a man in a full-face ski mask had two revolver-type pistols pointed at his "son's face." Testimony of C.R. (Doc. 183) at 7. The masked man told C.R.'s son "to run back up the street." *Id.* at 3. The teenager ran and C.R. "ran and got in between [his son] and the guy, just in case he wanted to shoot, and [then the masked man] jumped in [C.R.'s] car and took off."

*Id.* at 3.  When C.R. was asked what he thought was going to happen if he did not give up the car, he said: "He was probably going to shoot my son."  *Id.* at 8.

As to Count 5, A.R. testified that he had just left a tobacco shop, entered his vehicle and, the "[n]ext thing you kn[e]w," a masked man stuck a "gun right through" the car window and pointed it at "[his] head." Testimony of A.R. (Doc. 182) at 3–4.  The masked man told A.R., "Don't think about it."  *Id.* at 3.  A.R. gave up his vehicle.  He testified that he "for sure" thought it was possible that he would get shot in the head.  *Id.* at 5.

And as to Count 11, M.T. testified that, as she was about to put one of her grandchildren into a car seat, she saw a masked man walking towards her.  The man told her: "I'm not going to do anything. All I want is the car. Just give me the car."  Testimony of M.T. (Doc. 184) at 3.  The man "nodded his head down towards his waist side" where he had a visible gun.  *Id.* at 4.  M.T. gave him the car.  She testified that she was scared and that

**4**

she thought the masked man "could have shot [her]" if she had not turned over the car.  *Id.*

In each instance, the government did not present any evidence that the gun functioned or that the masked man touched any of the victims.

At the conclusion of the government's case-in-chief as well as at the end of the trial, Davis orally moved for a judgment of acquittal under Federal Rule of Criminal procedure 29(a).  The court denied both motions. Davis then, after the guilty verdicts, renewed his evidentiary challenge, this time in writing under Rule 29(c).  That written motion is now before the court.

Davis argues that the government failed to present sufficient evidence for a jury to find beyond a reasonable doubt that he "intended to cause death or serious bodily harm when [he] took the [cars]" as required by the federal carjacking statute, 18 U.S.C. § 2119.  The government argues that there was sufficient evidence for a jury to find that he had the requisite intent for all three carjackings.  The government is

5

correct.

To constitute carjacking under § 2119, the taking of a motor vehicle must, as stated, be committed with the "intent to cause death or serious bodily harm." 18 U.S.C. § 2119.  The intent requirement is satisfied where the government "proves that at the moment the defendant demanded or took control over the driver's automobile the defendant possessed the intent to seriously harm or kill the driver if necessary to steal the car."  *Holloway v. United States,* 526 U.S. 1, 12 (1999).  "While an empty threat, or intimidating bluff, would be sufficient to satisfy the [intimidation element of § 2119], such conduct, standing on its own, is not enough to satisfy § 2119's specific intent element."  *Id.* at 11.

Importantly, the Eleventh Circuit Court of Appeals has also stated that the defendant's intent "is to be judged *objectively* from the visible conduct of the actor and *what one in the position of the victim might reasonably conclude.*"  *Ovalles v. United States*, 905 F.3d

6

1300, 1303 (11th Cir. 2018) (emphasis added) (abrogated on other grounds).[1]

In all three instances in this case, a masked man brandishing a gun instructed the victims to give him their vehicles.[2] One victim had the gun pointed directly at his head, and another had the gun pointed directly at his child's head. The victims testified that they thought they, or a nearby loved one, would get shot if they did not comply. As the evidence reflected, M.T. was

---

1. This approach has a lineage that traces back to *Shaffer v. United* States, 308 F.2d 654 (5th Cir. 1962), where the former Fifth Circuit Court of Appeals determined that a victim's perception was to be considered in determining a defendant's intent on an assault charge under 18 U.S.C. § 113(c). *Ovalles* cites to *United States v. Fulford*, 267 F.3d 1241, 1244 (11th Cir. 2001), which cites to *United States v. Guilbert*, 692 F.2d 1340, 1344 (11th Cir. 1982), which in turn cites to *Shaffer*.

2. Under 18 U.S.C. § 924(c)(4), the term 'brandish' means, with respect to a firearm, "to display all or part of the firearm, or otherwise make the presence of the firearm known to another person, in order to intimidate that person, regardless of whether that firearm is directly visible to that person." Accordingly, while Davis did not point the gun at M.T., unlike his approach with the other victims, he did brandish it at her.

scared; C.R. put his body in front of his teenage son's because he thought the masked man might shoot his fleeing son; and A.R. "for sure" thought he might get shot in the head when the gun came through his car-door window. Testimony of A.R. (Doc. 182) at 5.

It is likely that, in the absence of the defendant being arrested on the spot and the gun being seized or the defendant having made a confession, there will not be any *direct* evidence of whether the gun used was real and loaded, so as to conclusively indicate that the defendant had at the time of the incident the "intent to cause death or serious bodily." 18 U.S.C. § 2119. The Eleventh Circuit law, therefore, allows for *circumstantial* evidence of such. Toward this end, it instructs, as the court charged in its jury instructions, that intent under § 2119 should be "judged," first, "objectively." The jury had to step back and look at things objectively. Then, second, through this objective lens, the jury had to assess "the defendant's conduct as shown by the evidence." And, finally, through this

8

objective lens, the jury had to assess "what one in the position of the victim might reasonably conclude."[3]

---

3.  The court gave this Eleventh Circuit Pattern Jury Instruction to the jury:

"The defendant can be found guilty of this crime only if all the following facts are proved beyond a reasonable doubt:

(1) The defendant took a motor vehicle from or in the presence of another;

(2) The defendant did so by intimidation;

(3) The motor vehicle had previously been transported, shipped, or received in interstate or foreign commerce; and

(4) The defendant intended to cause death or serious bodily harm when the defendant took the motor vehicle.

"To take 'by intimidation' is to say or do something that would make an ordinary person fear bodily harm. It does not matter whether the victim in this case actually felt fear ....

"To decide whether the defendant 'intended to cause death or serious bodily harm,' you must objectively judge *the defendant's conduct as shown by the evidence and from what someone in the victim's position might reasonably conclude*....

"The government contends that the defendant intended to cause death or serious bodily harm

*Guilbert,* 692 F.2d at 1344.

Therefore, in resolving whether the defendant had the necessary intent, testimony from a victim about the gun, about how the defendant handled the gun, about what was said, and about how the victim reacted--in short, the totality of the circumstances--while not necessarily dispositive, could provide circumstantial evidence that the gun was real and loaded. But moreover, and importantly, in resolving the intent issue, victim testimony cannot be accepted based solely on the narrow and subjective perspective of the victim; the victim's subjective belief is not enough, for the victim could be

_____

if the victim refused to turn over the car. If you find beyond a reasonable doubt that the defendant had that intent, then the government has proved this element of the crime. However, if you cannot find beyond a reasonable doubt that the defendant intended to cause death or serious bodily harm if the victim refused to turn over the car, then the government has not proved this element of the crime."

Final Jury Instructions (Doc. 159) at 9–11 (emphasis added).

overly sensitive or easily alarmed.  In other words, a victim's subjective fear alone does not automatically imbue the defendant with the intent to seriously harm or kill.  Rather, the jury had to "objectively judge the defendant's conduct .... *from what someone in the victim's position might reasonably conclude*." Final Jury Instructions (Doc. 159) at 9–11.  In other words, the jury could not rest just on the victim's subjective view of things, but had to step back and look at things objectively, at all the surrounding circumstances, before deciding whether someone (not the victim but someone in the victim's position) could "reasonably" conclude that the gun was real and loaded and not an empty gesture.

Here, the court finds that the testimony from victims C.R., A.R., and M.T., when considered in the context of all the evidence in the case--Davis was wearing a ski mask and verbally instructed the victims to give up their vehicle; two of the victims did so with a gun pointed at

his or a loved one's face;[4] and the victims were, in fact,
fearful of serious bodily harm--was sufficient for a
rational juror to conclude beyond a reasonable doubt that
Davis's gun was real and loaded and that he had the intent
to seriously harm them if necessary to steal their
vehicles.[5] *See United States v. Fulford,* 267 F.3d 1241,
1244 (11th Cir. 2001) (finding that brandishing a firearm
while wearing a ski mask, plus a direction to exit a

---

4.   Here, it cannot be overlooked that Davis did not
just point a gun at two of his victims, he pointed a gun
directly at one victim's *head* and directly at another's
son's *head*; this is definitely a significantly
exacerbating factor.  Without shelving common sense, it
is difficult how this circumstance, without some evidence
to the contrary, would not be enough to support a
carjacking conviction.

5.   Of course, Davis, while not required to do so,
had the opportunity to refute this inference by
presenting his own evidence that the gun was not loaded
or was just a toy.  He had the opportunity to show that
he intended only an "empty threat" or "intimidating
bluff." *Holloway*, 526 U.S. at 11; *see also United States
v. Fekete*, 535 F.3d 471, 481 (6th Cir. 2008) ("Assuming
that a defendant is able to present evidence that he or
she knowingly chose to carry an inoperable firearm or
purposely unloaded the firearm before committing a
carjacking offense, such evidence would strongly suggest
that the presence of the gun was an empty threat.").

vehicle, plus the victim's testimony that he feared for his life, was sufficient to infer the requisite carjacking intent).[6]

To the extent that Davis argues that brandishing alone is insufficient to infer intent beyond a reasonable doubt, *see* Supplemental Memorandum (Doc. 187) at 8 ("It is defendant's position that brandishing or using a firearm to frighten a victim is not alone sufficient to prove the specific intent to seriously harm or kill."),[7]

---

6. The court would also note, alternatively, that, in determining Davis's intent, the jury did not have evidence of just one carjacking, but cumulatively three.

Moreover, common sense would counsel that Davis himself should have been operating under the accepted warning that it should always be assumed that a gun is functionable and loaded and should never be pointed at anyone--unless you intend to shoot him.

7. *See Fekete*, 535 F.3d at 480 ("Absent some additional evidence of bad intent ... evidence that a defendant brandished a firearm during a carjacking is insufficient on its own to establish a specific intent to kill or cause serious bodily harm."); *see also Guerrero-Narvaez*, 29 F.4th 1, 14 (1st Cir. 2022)("We have held that touching or threatening a victim while brandishing a firearm is sufficient evidence of intent 'to cause death or serious bodily harm' within the meaning of § 2119.").

the court need not resolve that question because
brandishing does not stand alone on these facts. In
addition to brandishing, as stated, Davis was wearing a
ski mask and he verbally instructed the victims to give
up their vehicle, two of whom did so with a gun pointed
at their faces. The victims also essentially testified
that they were in fact fearful of serious bodily harm.
This is not a brandishing-in-isolation case. And, as
indicated above, the Eleventh Circuit has found
materially identical evidence to be sufficient to support
a guilty verdict under the federal carjacking statute.
*See Fulford,* 267 F.3d at 1244.

Davis also challenges applicable and binding circuit
case law that mandates that the defendant's intent "is
to be judged objectively from the visible conduct of the
actor and what one in the position of the victim might
reasonably conclude." *Ovalles,* 905 F.3d at 1303 (11th
Cir. 2018). However, he acknowledges that this court
will not, and cannot, ignore binding circuit law. *See*
Motion for Acquittal (Doc. 173) at 11 ("Davis is mindful

that Eleventh Circuit precedents are binding on the district court but raises this issue ... to preserve [it] in the event the Supreme Court should revisit or clarify the *Holloway* decision or should the Eleventh Circuit revisit or clarify the decisions on victim perception to prove specific intent.").

## II. THE FIREARM OFFENSES

As stated, Davis was also found guilty of three counts of using and brandishing a firearm: Counts 2, 6, and 12.  18 U.S.C. § 924(c) provides that it is a federal offense to brandish a firearm "during and in relation to any crime of violence."  The indictment was structured so that for each firearm count the "crime of violence" at issue was the preceding carjacking count.  Thus, for the count 2 firearm count, the predicate "crime of violence" was the carjacking alleged in count 1; for the count 6 firearm count, the predicate "crime of violence" was the carjacking alleged in count 5; and for the count 12 firearm count, the predicate "crime of violence" was

15

the carjacking alleged in count 11.  Thus, the jury could convict Davis of a firearm offense if the evidence was sufficient to convict him guilty of the predicate carjacking offense.  In his Rule 29(c) motion, Davis argues that, because the evidence was insufficient to convict him of the three predicate carjacking offenses, it was insufficient as to the firearm offenses as well.

However, as shown above, the evidence was sufficient to convict him of the three predicate carjacking offenses.  His Rule 29(c) motion, therefore, lacks merit as to the firearm offenses.


**\*\*\***

Accordingly, it is ORDERED that defendant Johnnie Leeanozg Davis's motion for acquittal (Doc. 173) is denied as to all six counts.

DONE, this the 13th day of December, 2022.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE


16